# Evan T. & Andrew Ellicott *vs.* Thomas Ellicott.
## December, 1833.

Where the estate of a deceased person sold for the payment of debts is insolvent, his creditors must be paid interest on their debts up to the day of its sale.

The mode of auditing accounts in such cases, is to calculate interest on claims against the deceased up to the day of sale, from which time the claimants, on the amounts ascertained to be due them by the audit, become as it were creditors of the fund arising from the sale, and entitled respectively to their proportions of the interest it may bear.

If the sale be for cash, no interest is received by the creditor; if on a credit, (and consequently carrying interest) should a creditor be paid as using due diligence he would be, on the day of the receipt of the money by the trustee, they would receive not only simple interest on their debts from their maturity, but interest compounded from the day of sale.

Where the creditor in equity causes his debtor's property to be sold for cash to the full amount of principal and interest, the debtor is absolved from all further liability.

The same principles which regulate the rights of creditors in sales simply for cash, or on a credit, are applied in mixed sales ; which are in part for cash, and in part for credit.

The cash portion of the proceeds of sale, or money first received, or so much thereof as may be ne⬛for that purpose, is first applied to the payment of the costs of ⬛ commission and expenses attending the sale, and the debts ; the res⬛ is the property of the debtor.

If the cash portion of the proceeds of sale, applicable to the payment of debts, be inadequate for that purpose, the portion of the debts unsatisfied thereby (and no more) will bear the same interest which the credit part of the sales bear.

A trustee appointed by the court of Chancery to sell property in pursuance of a decree, in his character as such, may for the benefit of those interested in the fund in his hands, and who are aggrieved by an erroneous order for its payment or distribution, appeal to this court for redress.

Before a trustee can be deprived of his ordinary allowance for commissions and expenses accruing under the execution of the trust confided to him, he must be notified of the charge against him, and afforded an opportunity of showing his innocence; he cannot be deprived of those allowances by the mere order of the court of Chancery, requiring him to pay them over to creditors where no complaint has been filed against him as trustee, or upon the presumption that he is responsible for interest upon money in his hands.

Where a decree or order is reversed upon appeal, it is the duty of this court to pass such a decree as ought to have been passed by the Chancery court.

Evan T. and Andrew Ellicott *vs.* Thomas Ellicott.—1833.

In a mixed sale, part for cash and part on a credit, where the trustee has paid one creditor too great a proportion of the cash, it may be corrected by subrogating the trustee to the rights of the satisfied creditor, as to the excess, upon the other part of the proceeds, for the benefit of the unsatis. fied creditors only. The trustees personally can derive no benefit from such a substitution, and the like principle shall prevail under the same circumstances, as to excessive payments made out of the credit portion of the sales.

Where a mortgagor is under no obligation to come in under a bill for the sale of a deceased person's real estate for the payment of debts, but may cling to the property specifically pledged for the payment of his debt, the court will not cast the interest in such a case accruing after the day of sale upon the other creditors, but upon the heirs of the mortgagor, but will allow the mortgagee his full claim, principal and interest, out of the purchase money, and allow the trustee a credit accordingly for payments to such mortgagee.

Appeal from the court of Chancery.

The bill in this case was filed on the 21st of September, 1827, by the appellee against the appellants and others, heirs at law of *Elias Ellicott*, deceased, for the sale of his real estate for the payment of his debts; for which purpose a decree was passed on the 12th of October, 1827, appointing the appellants trustees, to make the ▉▉▉ The sale was accordingly made and reported by th▉ ▉he Chancellor on the 23d of April, 1828, amounting to ▉▉,450, and the same was duly ratified and confirmed on the 11th of July, 1828. On the 28th November, 1831, the auditor reported a statement of the claims filed against the deceased's estate, applying the principal proceeds of sales to the payment of the trustees' allowances, for commissions and expenses, the costs of suit and the claims stated, including the claim of the appellee, (assigned to *Thomas C. Jenkins*) amounting, with interest to the day of sale, to $3,815 50, and distributing the balance amongst the heirs of the deceased; upon which the Chancellor, *Bland,* passed the following order on the 27th December, 1831:

"Ordered that the aforegoing report and account be, and they are hereby ratified and confirmed, and the trustees are directed to apply the proceeds accordingly, with a due proportion of interest that has been or may be received."

On the 13th January, 1832, the trustees reported that a part of the proceeds of sale was received by them on demand, without interest, and that the residue was still unpaid, and they submitted to be charged with that residue, with interest thereon from the day of sale.

On the 23d of the same month, the auditor, at the instance of the trustees, stated a further account, distributing the interest admitted to be in their hands, rateably amongst the creditors and heirs at law of the deceased.

To this account the assignee of the appellee excepted, 1. Because by said account he is not allowed legal interest upon the claim assigned to him against the said estate, although the proceeds of sale are fully competent to discharge said claim, with full legal interest thereupon, and all the other claims filed against the said estate, up to the time of payment of said claims.

2. Because the heirs at law of the said *Elias Ellicott* are admitted as such to a proportion of the interest received upon the sale of the said estate, in the report and account, whereby the exceptor as a creditor, is deprived of his full legal interest on his claim as aforesaid.

These exceptions were sustained by the Chancellor, by his order of the 11th February, 1832, and the auditor was directed to state an account accordingly.

On the 15th of February, 1832, the auditor reported a further account whereby the appellee was allowed six per cent. interest on $3,815 50, from the day of sale to the date of this report, making the sum of $4,690 52.

This report was confirmed by the Chancellor's order of the 17th February, 1832, directing and requiring the two trustees to pay the commissions and costs, and also to each one of the said creditors the full amount of the claim due to him as stated, with legal interest on the amount stated, from the date of the said report until paid, and then to distribute the residue of the said proceeds of sale, among the heirs at law of the deceased equally, with a due proportion of interest that has been or may be received.

The appeal was taken by the trustees from the orders of the 11th and 17th of February.

The cause was argued before BUCHANAN, Ch. J., and STEPHEN, ARCHER, and DORSEY, J.

*Alexander*, for the appellants, contended,

1. That the order of the 27th December, 1831, settled the rights of the parties, and the account reported by the auditor on the 23d January, 1832, is stated in conformity with said order. As long as the ratifying order of the 27th December, 1831, remains unrevoked, it is binding upon the rights of the parties in this cause. 2 *Mad. Ch. Pr.* 517. *Jacob Rep.* 284. 3 *Cond. Ch. Rep.* 133.

That order is not only in conformity with the practice of the court, but is agreeable to the justice of the case. A creditor has no right to ask that more of his debtor's property shall be sold than will pay the principal and interest of his claim, at the period of the sale; and if from any cause, not attributable to the debtor, there is a delay in the receipt of the money, the loss should not fall upon him. These sales are like sales by the sheriff, who can only sell enough to pay the amount due at the time of the sale, though the creditor may not be at liberty to demand the money until the return of the writ, which may not be for months afterwards. The same consequences result when money is paid into court by the vendee of an estate for the use of the vendor. In such a case the vendee is only bound to pay the amount of principal and interest, due at the time he pays it in, though a long period may elapse before the vendor can receive the money. The payment to the trustee, or into court, is for the benefit of the creditor, and no matter how long it may be before he actually gets the money, the loss of interest should fall on him.

But the order of the 17th of February, 1832, compounds the interest twice—first to the day of sale; and then from the day of the last account to the day of payment.

2. If, however, this creditor is entitled to the interest allowed him, it certainly should not be allowed as against his heirs at law; who are no way in default, but against the trustees, if any misconduct can be imputed to them.

*Johnson* and *Jenkins*, for the appellee.

1. In the original report of the sale by the trustees, there is nothing to show, whether the property was sold for cash, or on credit; nor was it until January, 1832, that the appellee was informed that the whole of the purchase money was not on interest; and consequently, neither the creditor or Chancellor can be considered as concluded by the first report, and order of ratification. *Hoye vs. Penn,* 2 *Harr. and Gill,* 478. The Chancellor may at any time in the progress of a cause, review and reverse orders passed by him. *Duvall vs. Farmers' Bank,* 4 *Gill and Johns.* 294. *Maccubbin vs. Cromwell,* 2 *Harr. and Gill,* 443. These heirs stand in the place of the ancestor, and if he could not deprive his creditors of their full claims, principal and interest, so neither can they. *Hoye vs. Penn,* 2 *Harr. and Gill,* 476. The appellee insists, that the creditors must be fully satisfied, principal and interest, before the heirs are entitled to any thing.

2. If, however, the Chancellor's orders would be reversed; if the heirs at law had appealed; still as they have not done so, and the only parties before this court are the trustees and the creditor, the orders must be affirmed. The heirs at law are to be considered as acquiescing; and the trustees cannot be allowed to avail themselves of any supposed injury done them. All the other parties may have been paid on the day of sale. The equitable rights alone of these appellants can be considered, and the question is, whether as against them, the appellee is not entitled to be paid in full out of the fund which they admit to be in their hands. If the decree should be reversed, this court will pass such decree as may be proper, upon the whole merits of the case; even although the grounds of the modified de-

cree were not presented by the exception. *Winder vs,* *Diffenderffer,* 3 *Gill and Johns.* 311. The ground of complaint by the appellants is, that they had not received interest on their proportions of the estate of the deceased debtor, as two of his heirs at law. They would have the same right to claim interest on their commissions as trustees. Such an allowance would be refused them, upon the ground that they have the money in their hands; and for the same reason they are precluded from claiming interest on their portions as heirs at law. They have had the money for those portions also, in their own hands.

This case is to be viewed as if these appellants were the only heirs of *Elias Ellicott.* Viewed in this light, and they are presented as admitting the appellees' claim, consenting to a decree, paying their own claims and commissions, and holding in their hands money belonging to the creditor, and refusing to pay interest upon it. It is said that this is like the case of money levied by a sheriff under a *fi.fa.* who makes the debt, interest and costs up to the day of sale, and then the interest stops. So it does as against the defendant. But suppose the sheriff fails to return and pay over the money in due time, would he not be liable for interest? He certainly would, and so will these trustees.

*Alexander* in reply.

If these orders are calculated to do injustice to any of the heirs of *Elias Ellicott,* they must be reversed upon the appeal of the present appellants. The misconduct of the trustees is not a ground relied upon in the exceptions, and this court consequently cannot make such misconduct the ground of their decree, even if they should be satisfied of its existence. They have had no notice, that such a charge would be made, and did not come prepared to defend themselves against imputed misconduct; and would, of course, be taken by surprise, if their conduct is thus arraigned. If, however, this could be done, the order of the Chancellor must be reversed; because it does not

direct the money to be paid by the trustees, but by the heirs at law, against whom no misconduct is, or can be alleged. So far as the debtor or his estate is concerned, a payment to the trustee, or sale of his property to the amount due, is a payment to the creditor ; and the question here is not between the creditor and trustee, but between the creditor and heirs at law. The case of *Hoye vs. Penn,* 2 *Harr. and Gill,* 478, does not affect this case. That only decides, that where the purchase money is not paid the resale is at the risk of the heir at law. But here the money was paid to the trustee, which is equivalent to a payment into court. If the decree is reversed in favor of the present parties, all others interested are entitled to the benefit of the reversal.

DORSEY, J., delivered the opinion of the court.

Three reasons have been assigned on the part of the appellee, why the decretal orders appealed from should not be reversed. *First,* because none of the parties interested have any cause to complain of them. *Secondly,* that if such cause of complaint does exist, as regards those distributees of *Elias Ellicott,* who are not *nominatim* parties to this appeal, their equities cannot be relied on as grounds of reversal by the appellant trustees. And *thirdly,* that if the appellants are injured in their rights as distributees, they have in the discharge of their duty as trustees, been guilty of such gross negligence and misconduct, as to have rendered themselves justly chargeable with a still greater amount of loss, than that to which their individual rights have been subjected.

We will proceed to consider these propositions in the order in which they have been stated. To sustain the orders from which the appeal has been taken, it is asserted to be a rule in courts of equity of this State of universal truth, that where the estate of a deceased person, sold for the payment of his debts, is solvent, his creditors must be paid interest on their debts up to the time of their payment. If

up to the day of sale, instead of the day of payment, had been
the time specified, this assertion could not have been con-
troverted.   But there exists not, and never did exist, in our
Chancery court such a rule as that which has been stated.
The universal mode of auditing accounts in that court, in
such cases, has been to calculate interest on claims against the
deceased up to the day of sale, from which time the claim-
ants on the amounts thus ascertained, become as it were
creditors of the fund arising from the sales, and entitled
respectively to their proportions of the interest it may bear.
If the sale be for cash, no interest is received by the credi-
tors after the day of sale; if on a credit (and consequent-
ly carrying interest) should the creditors be paid, as using
due diligence they would be, on the day of the receipt of
the money by the trustee, they would receive not only
simple interest on their debts from their maturity, but in-
terest compounded from the day of sale.   And this practice
of the court of Chancery is founded on the soundest princi-
ples of equity and justice.   If a creditor goes into that
court for relief, and causes his debtor's property to be sold
for cash, to the full amount of principal and interest, ought
not the debtor to be absolved from all further liability? So,
on the other hand, when the sale is on a credit, the delay
being for the debtor's benefit, the creditor is placed in as
eligible a condition in legal contemplation, as if he had
been paid his debt and interest on the day of sale; the
amount thereof bearing interest from the time of sale, until
it is received by the trustee, who hands it over to the cred-
itor the moment it is called for; (the necessary audit with
its ratification being first obtained.) The procuring of which,
though properly the act of the diligent, faithful trustee, is
equally within the power of any of the creditors.

   The same principles which regulate the rights of credi-
tors in sales simply for cash, or on credit, are carried out
in mixed sales, which are in part for cash, and in part for
credit.   The cash portion of the proceeds of sale, or money
first received, or so much thereof as may be necessary for

that purpose, is first applied to the payment of the costs of suit, the commission and expenses attending the sale and the debts; the residue is the property of the debtors. Whether the sale be for cash, or on credit, makes not the slightest variation in the form of the auditor's statement. The only difference is in the order of ratification; which in a credit sale directs the application, not only of the amount of sales, but of the interest "in due proportions, which has been or may be received." If the cash portion of the proceeds of sale, applicable to the payment of debts as stated by the auditor, be inadequate for that purpose, the portion of the debts unsatisfied thereby (and no more) will bear the same interest which the credit part of the sales bear.

Let us now see what it is, that the Chancellor has decided by his decretal order of the 17th February, 1832, ratifying the audit, made under his order of the 11th of the same month, that we may ascertain how far injustice has been done to any of the parties interested.

He has decreed, that the appellee be paid not only the principal of his debt, with legal interest thereon from the day it became payable until the day of its payment, but that he be paid out of the trust fund, his principal and interest to the time of sale; with compound interest thence till the last audit; and interest on principal and interest thus compounded, from that date until paid. For this mode of computing interest under circumstances at all analogous to the present, we can find no precedent in any proceeding of courts of law or equity. It is an innovation upon the just, and long established practice of courts of equity before referred to, which this court cannot sanction. It could not be sustained, even if the entire sales had been on a credit bearing interest; because after the last audit, it would be allowing the creditor interest on a larger amount of principal than he had any title to; even on the hypothesis of his becoming from the day of sale, the creditor of the fund; which for him is the most favorable aspect in which his

rights can be regarded. Instead of receiving interest on $3,815 50, the amount of debt, principal and interest, on the day of sale, he is allowed from the last audit interest on $4,690 52.

But when we look at this order in reference to the facts before us, its hardship and injustice appear strikingly manifest. A considerable part of the proceeds of sale were in cash, all of which, with the exception of the expenses of sale and suit, belongs to the creditors; not a farthing of it had these distributees any power to receive. These creditors, after sleeping upon their rights for years and suffering their money to lie dead in the hands of the trustees, turn round upon the representatives of the debtor who have been in no default, and claim of them interest upon the creditor's money not received, and left unproductive by reason of their own negligence. A single illustration (if illustration be necessary) will demonstrate the injustice of such a procedure. The mortgaged estate of a debtor owing $20,000, is sold under a decree of the Chancery court for $25,000; $20,000 of which is by the terms of sale, paid in cash, and on the remaining $5,000 a credit of five years is given. The creditor suffers the $20,000 to remain in the trustees' hands until the expiration of the five years' credit. According to the principles established by this order, he must be entitled to the whole $25,000; and had he delayed to demand payment of his money for ten years, the debtor would have owed him, in addition to the $25,000, a further sum more than $5,000—Nay, had there been a few intermediate audits, and the interest compounded, as in this case, the balance against the debtor would have exceeded $10,000. This order is still further liable to objection, because departing from the common form used in similar cases, as to the application of interest received, it directs the trustees to pay interest to the creditors, not out of, or in proportion to the interest by them received, but without reference to such receipt. Affirm then this order, and such payment of interest must be made by the trustees, notwithstanding the

whole credit portion of the proceeds of sale may have been paid to them, on the 14th of January, 1832; and may ever since have been remaining idle in their hands, awaiting the final adjudication of this controversy. And this payment of interest, never received, is to fall upon whom? Upon the trustees? No. But upon the innocent distributees of *Elias Ellicott.*

If the unsatisfied debts are to bear interest, and interest compounded too, until paid, justice would dictate that when the cash part of the proceeds of sale were applied to the payment of any debt, that such payment should stop any further accrual of interest on the debt so paid. But in this case, after the debt has been fully paid off, with the cash proceeds of sale in the hands of the trustees, such debt is still decreed to continue to bear compound interest, to be paid by the distributees of *Elias Ellicott.* And for whose benefit? For the exclusive benefit of the trustees who paid the debt, with the funds of the distributees in their hands; the cash fund being *ex consequenti* theirs, from the mode in which the Chancellor has decreed payment to the creditors. If this be not considered by the appellees' solicitor cause of complaint to the distributees, it is difficult to conceive what would be so regarded.

The Chancellor erred too, in his order of the 11th February, 1832, in ruling good the exceptions of the appellee to the auditor's second statement; it being a departure from that uniform course of proceeding, which in similar cases, as we have before stated, has always prevailed in the Chancery court of *Maryland.*

The second ground upon which the reversal of these decretal orders has been resisted, we also deem untenable. A trustee, in his character as such, may, for the benefit of those interested in the fund, and who are aggrieved by an erroneous order for its payment or distribution, appeal to this court for redress.

This right we consider as having been recognized by

this court, in the case of *Kent vs. Alexander, trustee of Mullikin*, decided at June term, 1831.

We entertain the same opinion, as to the insufficiency of the appellees' third position. Even if the facts were true as alleged, that the trustees have so conducted themselves in the execution of their trust, as to become personally liable for interest, in the mode in which the Chancellor has charged it upon the trust fund; that question is not presented by the record, nor was it considered or decided by the Chancery court.

Before the trustees could be visited by such a penalty as that now attempted to be inflicted upon them, they must be notified of that of which they are accused, that an opportunity may be afforded them of showing their innocence. To sustain the decision of the Chancery court, would be to condemn them unaccused, and unheard. Not even an intimation was given to the trustees that they were held answerable for interest; or that on account of their misconduct the rights of the appellee to interest, had been in the slightest degree varied. No bill or petition to that effect, has been filed against them. Not the most remote insinuation of the kind is to be found in the exceptions. The claim of interest is preferred solely upon the grounds that the estate of the deceased is solvent; that the distributees are are entitled to no interest until creditors are fully paid.

Seeing that the decretal orders appealed from must be reversed, it is incumbent upon this court to decree such a distribution of the deceased's estate, as ought to have been made in the Chancery court. For this purpose there must be a new audit as regards the questions of interest since the sale. Neither that made by the auditor without the Chancellor's instructions, nor that made with them, being consistent with the rights and equities of the parties. To enable the auditor to make such a statement as will meet our approbation, we will suggest the outlines of the account which ought to be stated. The items of the first audit should be assumed as correct, save one, the nature and operation of

which we shall hereafter notice. The commissions allowed to the trustees should be deducted from the cash part of the proceeds of sale; the residue whereof shall be in due proportions, applied in payment of all those entitled to claim under that audit, except the distributees and trustees. The balances then due all such claimants shall bear interest until the time when the trustees first paid off a creditor. From that period the balance of the creditor so paid off, which bore interest, shall continue to bear interest for the benefit of the other claimants, in proportion to their respective claims; or in other words, shall be proportionably distributed amongst other claimants; their cash in the hands of the trustees having been applied to its payment, they shall, to that amount be subrogated to the rights of the satisfied creditor; and at every subsequent payment of a creditor by the trustees, the same process shall be adopted in adjusting the rights of the remaining creditors, until the whole cash fund shall be exhausted; after which the unpaid creditors will be entitled to interest upon the amount of their debts, as ascertained by the auditor in his first report, up to the time when the credit portion of the sales is received by the trustees.

Should it appear that the trustees, in their payments, have exceeded the cash by them received, to the amount of that excess, they will be substituted to the rights of the creditors paid off; and thenceforward should be allowed interest on that amount of the creditor's principal debt so prematurely paid off. And they should also be allowed the interest on such principal debt thus advanced, by their payment in anticipation; which they will be reimbursed, but without any interest thereon, when the interest is collected on the credit portion of the sales. The principal debt of each creditor, it must not be forgotten, with the exception mentioned, is the amount of principal and interest, ascertained to be due him by the auditor's first statement.

In making the audit we require the auditor will conform to the principles we have before stated for his government,

except as regards the mortgaged debt due to the executors of Andrew Ellicott. The amount paid in satisfaction thereof by the trustees, must be credited to them, and deducted from the purchase money, for which the mortgaged premises were sold to John Ellicott; so that from $8,350, the cash part of the proceeds of sales, there should be subtracted the sum of $4,740, the principal and interest of the mortgaged debt paid by the trustees; thus leaving a balance of the cash fund of $3,610, to be distributed in the manner hereinbefore pointed out. The reason why this claim of Andrew Ellicott's executors is to be distinguished from other debts due by Elias Ellicott, is, that they were not bound to come in and seek payment under the proceedings of the Chancery court, for the sale of the deceased's real estate, but might cling to the property specifically pledged for the payment of their debt, and hold on until they were fully paid both principal and interest. If the interest paid were greater than would have been allowed, had they come in as creditors under the proceedings in Chancery, the burden should be cast on the estate of Elias Ellicott, and no part of the loss be visited on his creditors. By the settlement proposed, the creditors receive every thing that in justice they can demand; and the distributees are left without diminution, in the enjoyment of every thing to which in equity thay are entitled.

The principle adopted by the auditor of the court of Chancery, in his second account, in the distribution of the interest received by the trustees, we cannot sanction. The debts were paid by them out of the trust fund in their hands. They are entitled to none of the advantages of equitable substitution. Their acts cannot enure to their individual benefit, but to the benefit of those to whom the fund by them appropriated belongs. If they have paid to any creditor more interest than he was authorised to receive, the fault is their own, and they must bear the loss.

**DECREE REVERSED WITH COSTS IN THIS COURT.**