223 Md. 135 (1960)
162 A.2d 739
EX PARTE IN THE MATTER OF AURORA FEDERAL SAVINGS AND LOAN ASSOCIATION
[No. 245, September Term, 1959.]
Court of Appeals of Maryland.
Decided July 1, 1960.
*136 William F. Podlich, Robert F. Podlich and Walter P. Reese on the brief, for appellant.
PRESCOTT, J., delivered the opinion of the Court.
The sole question involved in this appeal is whether a mortgagee in Anne Arundel County is entitled to interest upon the unpaid principal amount of its claim against the mortgagor until the ratification of the auditor's report, or does such interest cease after the date of the sale of the mortgaged premises. After foreclosure proceedings and a sale of the real estate involved, the chancellor overruled exceptions by the appellant to an auditor's account that allowed it interest upon the unpaid principal of its claim until the date of the auction sale of the mortgaged property, but denied its claim for interest thereon until the ratification of the auditor's report, which occurred several months later. From the final order of ratification of said account, the appellant noted this appeal.
In Maryland, different methods have been employed, from time to time, for the foreclosure of mortgages. In early times, the only remedy of the mortgagee was by what was termed a "strict foreclosure": a proceeding whereby the mortgagee, in case of default by the mortgagor, foreclosed the equity of redemption. No sale of the mortgaged property took place, but the equity court determined the amount due the mortgagee and passed a decree naming a date for the sum named in the decree to be paid, or the mortgagor's right to redeem would be forever taken away. Ginsberg and Ginsberg, Mortgages and Other Liens, p. 278, and cases there cited.
Beginning with Chapter 58 of the Acts of 1784, the Legislature *137 has by successive statutes[1] authorized sales of mortgaged premises by court decree (formal proceedings), by assent decrees authorizing sales, and sales under powers of sale contained in the mortgages. The present statutes and Rule that relate to mortgages and regulate their foreclosure are, for the main part, Code (1957) and Cum. Supp. (1959), Article 66, and Rule 1391.
We find no previous decision of this Court, no statute nor any rule of court that deals directly with and controls the question here involved. We are informed that the practice relative to the same varies in different sections of the State: some allowing interest on the principal indebtedness until the ratification of the auditor's report; others stopping the interest on the date of the sale of mortgaged property. In seven counties, there is provision for the continuation of the interest named in the mortgage for a period of 60 days after the sale or until the ratification of the auditor's account, whichever shall occur first. Code (Cum. Supp. 1959), Article 66, Section 8.
In the instant case, the proceedings were instituted under the provisions of Code (1957), Article 66, Section 6. This section provides, inter alia, that "the proceeds of such sales [the sales of mortgaged premises] shall be accounted for, to, and be distributed by, said court, in the manner usual in cases of sale under decrees of said court." The mortgage instrument herein calls upon the mortgagors to repay the money borrowed "in installments with interest thereon from the date hereof * * * until the whole of said principal sum and interest shall be paid * * *." (Italics added.) The question, therefore, in the absence of any statute, rule of court or decisional direction, narrows to whether the principal sum due to the mortgagee was "paid," in the eyes of the law, when the auction sale took place, or when the auditor's account was ready for ratification.
The early case of Ellicott v. Ellicott, 6 G. & J. 35, dealt with the question of interest after a judicial sale. There, a *138 creditor's bill was filed and the real estate of a deceased person sold to pay his debts. The Court stated that it had been the regular practice in auditing accounts after sales in creditor's bills in the Chancery Court to calculate interest on claims against the deceased up to the day of sale, from which time the claimants on the amounts thus ascertained become, as it were, creditors of the funds arising from the sales. If the creditor has his debtor's property sold for cash, no interest is received by the creditor after the day of sale; but, if on credit, and consequently carrying interest, (the delay being for the benefit of the debtor) the creditor is entitled to interest on his claim, the principal amount of the decedent's indebtedness to him plus interest to the date of sale, from the date of sale until the credit portion of the proceeds is received by the trustee. And when a sale is made for part cash and partly on credit, the same principles which regulate the rights of creditors in sales simply for cash, or for credit, are carried out.
In Mahoney v. Mackubin, 54 Md. 268, 277, although the question of the method of allowing interest does not seem to have been raised, the Court stated that it found no error in the mode in which the account dealt with interest. The auditor had calculated interest on the mortgage debt down to the day of sale, and the Court pointed out that the order ratifying the account would contain the usual clause directing the party who made the sale to apply the proceeds of sale according to the account, "with a due proportion of interest as the same has been or may be received." This latter provision, of course, permitted the allowance of interest after the date of the sale, according to the method stated in the Ellicott case, supra.
The provision in Section 6, quoted above, which provides that "the proceeds of such sales shall be accounted for, to, and be distributed by, said court, in the manner usual in cases of sale under decrees of said court" does not, we think, prevent parties to a mortgage from agreeing upon the payment of lawful interest after a foreclosure sale. The provisions of Article 66 of the Code relating to the foreclosure of mortgages do not provide for the exercise of a special jurisdiction by *139 the equity courts of this state, but offer a summary, expeditious and usually less expensive mode of exercising a general jurisdiction of said courts. Cockey v. Cole, 28 Md. 276; Warehime v. Carroll County Bldg. Ass'n, 44 Md. 512; Ivrey v. Karr, 182 Md. 463, 34 A.2d 847. Cf. Walsh v. Jefferson Federal Savings and Loan Association, 216 Md. 131, 138, 139 A.2d 847. One of the main objects of Sections 5, 6 and 7 of said Article 66 is to bring sales made by their authority and the resulting equity proceedings under the cognizance and guidance of the court, and such proceedings are to be conducted and the validity of the sales tested as ordinary sales made by a trustee appointed by a decree of the court. Walsh v. Jefferson Association, supra; Ivrey v. Karr, supra, 182 Md. at page 469. Cf. Chilton v. Brooks, 69 Md. 584, 587, 16 A. 273; Bachrach v. Washington United Cooperative, 181 Md. 315, 319, 29 A.2d 822; Albert v. Hamilton, 76 Md. 304, 308, 25 A. 341.
In Quillen v. Kelley, 216 Md. 396, 408, 140 A.2d 517, we pointed out that when covenants are placed in a mortgage which go beyond providing for the creation of a lien, they necessarily are the result of an agreement between the parties. In Mobray v. Leckie, 42 Md. 474, 476, a mortgage foreclosure case, the Court upheld and enforced a provision in the mortgage that in case of default in the payment of interest, the whole remaining indebtedness should become due and payable. Also, provisions for the payment of an attorney's fee for collecting the debt and commissions to the parties making sale were held to be valid in Gaither v. Tolson, 84 Md. 637, 36 A. 449. And, insofar as it has come to our attention, it seems to be the practice, generally, for the parties to a mortgage to agree upon the commissions to be allowed the parties making sale, in case of default; although those commissions are not the same as the commissions granted to trustees under ordinary sales by decree. We conclude, therefore, that the requirement in Section 6 that the proceeds shall be distributed in the manner usual in cases of sales under decree does not prohibit the parties to a mortgage from agreeing that lawful interest on the mortgagor's indebtedness shall continue *140 after the date of foreclosure sale; and we further conclude that said requirement does not vary, by implication, such an agreement, so as to cut off interest on a mortgage after the date of the sale.
It is stated in 59 C.J.S. Mortgages, § 179 b: "The time during which interest on a mortgage runs is sometimes regulated by statute; but in the absence of statute the agreement of the parties controls." Cf. 30 Am. Jur., Interest, § 68. We have no such statute in Maryland, except as noted above.
Contracts for the payment of interest are construed by the same rules of construction as are applied to contracts generally. 30 Am. Jur., Interest, § 5. The agreement between the parties in this case is clear and unambiguous. It calls for the payment of interest by the mortgagor from the date of the mortgage "until the whole of said principal sum and interest shall be paid." It is universally recognized that a mortgagee in this jurisdiction is not actually paid his claim upon the date of the sale of the mortgaged premises. The sale must be reported to, and ratified by, the court; and the auditor must prepare his account, which must, likewise, be ratified before the proceeds of sale may be safely distributed. With this practice so generally known and almost invariably followed, it seems to us that it would place a strained and somewhat tortured construction upon the mortgagors' and mortgagee's agreement to hold that the interest was, implicitly, stopped upon the date of the foreclosure sale. In Maryland, since early days, the tendency of the Court has been to treat interest as just compensation due. Robert C. Herd & Co., Inc. v. Krawill Machinery Corp., 256 F.2d 946, 952 (4th Cir.1958); Picking v. Local Loan Co., 185 Md. 253, 265, 44 A.2d 462. Cf. Affiliated Dist. Brands Corporation v. R.W.L. Wine and Liquor Co., 213 Md. 509, 132 A.2d 582. We think the agreement called for the payment by the mortgagors of interest on the principal amount of the mortgage claim, plus simple interest at the rate named in the mortgage until the auditor's report, if promptly made, could be ratified; and, as the subsequent delay has been caused by no fault of the mortgagee, it should be allowed interest at the rate *141 named in the mortgage until the new auditor's account, promptly stated, can be ratified.
Order reversed, and cause remanded for further proceedings not inconsistent with this opinion.
NOTES
[1] For some of the earlier statutes, see Ch. 72 of the Acts of 1785; Ch. 203 of the Acts of 1825; Ch. 192 of the Acts of 1826 and Ch. 249 of the Acts of 1836.