## GOLDENBERG *v.* THE TITLE GUARANTEE COMPANY

[No. 109, October Term, 1956.]

*Decided March 6, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Eldridge Hood Young,* with whom was *Morton M. Robinson,* on the brief, for appellant.

*Joseph I. Huesman,* for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court No. 2 of Baltimore City, overruling exceptions to an auditor's report in a mortgage foreclosure case, and directing the clerk of court to pay over to the appellee a balance of $1,138.69 remaining after the satisfaction of the mortgage debt and costs.

The facts are undisputed. The Aurora Federal Savings and Loan Association, to secure a loan of $9,000.00 to Sarah Glass Schaffer and husband, on April 16, 1952, took a mortgage on her leasehold property 3712 Eldorado Avenue, which was duly recorded. The appellee furnished a judgment search and reported no judgments of record against the Schaffers. There was a default in the mortgage payments, and Aurora obtained a decree on January 21, 1956, appointing William F. Podlich trustee to sell the mortgaged premises and convey the property to the purchasers or assigns "free, clear and discharged from all claims of the parties hereto, * * * and those claiming by, from or under them, or either of them." Pursuant to the decree, the trustee sold the premises at public auction to Eli Simpson and wife for $9,365.00, creating a surplus in excess of the mortgage debt of $7,234.64. Before final ratification of the sale Albert Rose and wife were substituted as purchasers.

Saul Goldenberg, the appellant, on August 20, 1950, had obtained a judgment of $2,648.99, with interest, costs and attorney's fee, against Sarah Glass Schaffer. The Title Guarantee Company failed to report this judgment, and its existence was unknown to Aurora, the trustee or the purchasers until after the sale was reported on February 23, 1956. Goldenberg, who had advanced money to Mrs. Schaffer after the mortgage was recorded, had obtained a second judgment against Mr. and Mrs. Schaffer on April 29, 1955, on which there was a balance due of $3,775.16 as of August 8, 1955.

When Aurora learned of the prior judgment, it called upon the Title Company to save it harmless, which the Title Company agreed to do. On February 26, 1956, the substituted purchasers filed a petition reciting the discovery of the prior judgment, and stating that although they were desirous of purchasing and taking title to the property, they were advised that until the judgment was satisfied the property could be sold on execution at any time to satisfy it. Accordingly, they prayed that the trustee be directed to pay the judgment in priority to the mortgage claim and ratify the sale on this condition. Aurora consented to the passage of the order as prayed, relying upon the Title Company to save it harmless. An order was signed as prayed, but rescinded on the same day, when Goldenberg filed a petition praying payment of his second judgment out of the balance remaining after satisfaction of the mortgage claim. The Chancellor signed an order directing that the second judgment be "allowed in its proper priority to be paid out of proceeds of the sale * * * after the payment of the mortgage debt, costs and expenses * * *."

On April 18, 1956, the Title Company filed a petition reciting that it was the assignee from Goldenberg of the first judgment of August 24, 1950, which it had acquired on April 6, 1956; that it had waived the priority of this judgment lien in favor of the mortgage lien, reserving all other rights and equities, and that it had entered the waiver of record. It claimed the surplus after satisfaction of the mortgage claim, as assignee of the first judgment and in priority to the second judgment still held by Goldenberg. The Chancellor signed an order directing payment of the assigned judgment claim "in its proper priority". At the same time the Chancellor signed an order ratifying the sale and directing that "the claims of those persons holding judgments against the said Sarah Glass Schaffer, * * * filed, or to be filed in this proceeding, be allowed by the Auditor in accordance with their proper priorities." On May 9, 1956, the auditor found and reported that the first judgment was entitled to the balance in priority to the second judgment. Exceptions to

this report and account were subsequently overruled, after hearing.

The appellant argues that a sale under a mortgage foreclosure decree passes only the title of the mortgagors in the property sold, and hence his right to proceed against the property on his prior judgment was unaffected by the foreclosure sale, citing *Garner v. Union Trust Co.*, 185 Md. 386, 392, and *Sansbury v. Belt*, 53 Md. 324, 331. He further argues that as holder of the second judgment he was entitled to file his claim against the surplus of sale under the foreclosure decree, after satisfaction of the mortgage, citing *Wilmer v. Savings & Bldg. Assn.*, 143 Md. 272, 279. Cf. *Hardy v. Smith*, 41 Md. 1, 2, and *Brick Co. v. Robinson*, 55 Md. 410, 416. If we assume that the argument is sound, it overlooks the fact that there was a waiver of any claim of priority to the mortgage based on the first judgment, and in its present posture the case presents only a question of priority as between the first and second judgments, in rival claims asserted against the surplus. There is no doubt that judgments take effect according to their date and are entitled to be satisfied in the order of their seniority. 2 *Poe, Pleading and Practice* (Tiffany's Ed.), § 378; *Messinger v. Eckenrode*, 162 Md. 63, 68; *Pfeaff v. Jones*, 50 Md. 263, 270. It is also well settled that a judgment creditor is not required to look to any one piece of property rather than another for the purpose of enforcing it. *Frey v. McGaw*, 127 Md. 23, 27; *McHugh v. Martin*, 198 Md. 173, 177.

It seems clear that neither the purchasers at the mortgage foreclosure sale, nor the mortgagee, Aurora, desired to have a sale set aside which had produced a satisfactory price for the property free of encumbrances. On the other hand, they were never willing that the sale should be ratified unconditionally, subject to the general lien of the first judgment, but insisted on the satisfaction of the first judgment and the mortgage debt. They looked to the Title Company to accomplish this result in one way or another. While recognizing its obligation to the mortgagee because of its mistake, the Title Company owed no duty to the judgment creditor and was free to bargain with him at arm's length. The real

question seems to be whether the Title Company is estopped to assert its claim under the first judgment which it purchased, in priority to the second judgment which remained in the hands of its assignor. We find no basis for a claim of estoppel. Doubtless the appellant could have declined to accept the Title Company's offer to purchase the first judgment. In that event the foreclosure sale in all probability would not have been ratified, and another sale subject to the first judgment would not have produced any surplus at all. Or the appellant might have insisted that he would not assign the first judgment but would only agree to an order of satisfaction. Instead, the appellant accepted the Title Company's offer and executed a document, approved by the attorneys for both parties, reciting that in consideration of the sum of $3,682.09, the full amount of its claim under the first judgment, Goldenberg assigned "all my right, title and interest in and to said judgment without prejudice as to any and all rights of: (1) the assignor as holder of a judgment against the above named defendant dated April 29, 1955, * * * ; (2) the assignee, as the holder of this judgment." This was accompanied by a signed order to enter the judgment to the use of the Title Company.

It is important to note that the sale had not been ratified at the time this assignment was executed, or until after the waiver in favor of the mortgage lien was executed and recorded. The order of ratification directed the auditor to dispose of the surplus in accordance with the proper priorities of judgment claims "filed or to be filed". As the Chancellor stated in his opinion: "It is true that the sale was allowed to go through and the account ratified under an agreement, but there was a reservation of rights, the saving and reserving to the Title Company, which was the purchaser of the first judgment, of all other rights and equities which it had as owner and holder of the judgments. * * * I do not find anything in the stipulations or the purchase which operated as a waiver of the right of the judgment creditor to proceed against the property of the debtor, no matter where found."

*Decree affirmed, with costs.*