691 A.2d 272

**91ST STREET JOINT VENTURE, et al.**

v.

**Edward S. GOLDSTEIN.**

**No. 1035, Sept.Term 1996.**

Court of Special Appeals of Maryland.

March 28, 1997.

562

Stephen J. Nolan (Stuart A. Schadt and Noal, Plumhoff & Williams, Chtd., on the brief), Towson, for Appellants.

Henry J. Williams, Silver Spring, for Appellee.

Argued before EYLER, THIEME and SONNER, JJ.

EYLER, Judge.

The question presented by this appeal is whether the Circuit Court for Baltimore County erred in vacating a charging order pursuant to which it had appointed a receiver to transfer a joint venture interest. We hold that the trial court possessed broad discretion to fashion the charging order and to review for basic fairness the transfer of the debtor's interest, and that it did not abuse its discretion in vacating the charging order and refusing to ratify the transfer. Accordingly, we shall affirm the judgment of the trial court.

## Facts

On July 25, 1994, the trial court granted a petition by appellants, 91st Street Joint Venture, a joint venture and a Maryland general partnership, Joint Venture Holding, Inc., and Princess Hotel Ltd. Partnership, to confirm an arbitrator's award. Appellants and Edward S. Goldstein, appellee, are the joint venturers in 91st Street Joint Venture. A dispute between appellants and appellee regarding capital calls required under the joint venture agreement was the subject of the arbitrator's award. Pursuant to that award, appellee's interest in the joint venture was reduced to 0.2022%, and a judgment, representing fees and expenses incurred in the arbitration, was entered in favor of appellants against appellee in the amount of $55,938.08.

On August 5, 1994, the trial court entered a charging order against appellee's 0.2022% interest in 91st Street Joint Venture. The order appointed William A. Hahn, Jr., an attorney, as receiver, for the sole purpose of effectuating a transfer, assignment, and/or conveyance to the joint venture of appellee's interest therein in the event that the judgment remained unsatisfied more than 15 days after service of the order on appellee. On August 18, 1994, appellee noted an appeal to this Court. On August 23, 1994, the trial court entered an order staying enforcement of the judgment and fixed a supersedeas bond in the amount of $56,000. In paragraph E, that initial order of stay further provided that

> such stay of the enforcement of the Judgment does not extend to the right of the Movant/Petitioner [appellee] to challenge the Respondent's [appellant's] good faith request for issuance of the ... Charging Order, the adequacy of notice given to the Petitioner and any specific provisions of said ... Charging Order....

On September 21, 1994, the trial court amended its order staying enforcement of judgment. In that order, the court increased the amount of the bond to $61,600 and deleted paragraph E of the first order of stay "in light of the pending appeal to the Court of Special Appeals of Maryland...."

Appellee posted a cash bond in the amount of $61,600 on October 20, 1994. We dismissed appellee's appeal for lack of prosecution on our own motion on June 6, 1995, and the mandate issued on July 5, 1995.

On February 1, 1996, appellants sought and obtained an order dissolving the stay of enforcement of the judgment. On February 23, 1996, William Hahn filed a report with the Clerk of the Circuit Court stating that he had assigned appellee's joint venture interest to the appellants, valued by an independent accounting firm at $28,950, in partial satisfaction of the judgment. On the same day, appellants filed a petition to release part of appellee's bond and to retain it in an amount sufficient to satisfy the unsatisfied portion of the judgment. The judgment with interest at that time was $64,752.83, and the amount deposited in the Clerk's Office was $63,501.09, representing the cash bond plus accrued interest.

On March 6, 1996, appellee filed an opposition to appellants' petition, a motion to release the bond, distribute the funds, and vacate the charging order, and exceptions to the receiver's report. At a hearing on March 27, 1996, the trial court orally granted appellee's exceptions and motion to vacate the charging order and denied appellants' petition to release part of the bond. The rulings were subject to the condition that, by April 8, 1996, appellee deposit into the court additional cash to cover the deficit between the amount held in the Clerk's registry and the amount necessary to satisfy the judgment with accrued interest. The court indicated that, if the judgment was not fully satisfied by April 8, 1996, the court would approve the transfer of appellee's interest to appellants on that date. The court further instructed appellee's counsel to prepare a written order. Appellee paid the deficiency into the Clerk's registry on March 27, 1996. The parties were unable to agree to the contents of a prepared written order and appeared at a second hearing on May 7, 1996. After that hearing, the trial court entered an order, dated May 22, granting appellee's exceptions and his motion to vacate the charging order and denying appellants' petition to release part of the bond. Appellants filed a timely appeal from the court's written order.

## Question Presented

The parties pose several questions to this Court but, in essence, inquire whether the trial court erred in setting aside the receiver's transfer of appellee's partnership interest and in vacating the charging order and terminating the receivership.

## Discussion

■ A charging order is the statutory means by which a judgment creditor may reach the partnership interest [1] of a judgment debtor. *Bank of Bethesda v. Koch,* 44 Md.App. 350, 354, 408 A.2d 767 (1979). Prior to its availability, the courts would resort to common law procedures for collection that were ill-suited for reaching partnership interests. Gose, The Charging Order Under the Uniform Partnership Act, 28 Wash.L.Rev. 1 (1953). Typically, despite the fact that individual partners do not have title in partnership property, partnership property would be seized under writs of execution; the debtor partner's interest in the partnership would be sold, often to the judgment creditor, subject to the payment of partnership debts and prior claims of the partnership against the debtor partner; and the sale of the debtor partner's interest would result in compulsory dissolution and winding up of the partnership. *Id.* As noted by at least one jurist, "[a] more clumsy method of proceeding could hardly have grown up." *Id.* (quoting Lord Justice Lindley of the English Court of Appeal, *Brown Janson & Co. v. Hutchinson & Co.,* 1 Q.B. 737 (1895)).

The charging order solution to this procedural nightmare appeared first in the Partnership Act adopted in England in 1890, and then in the 1914 Uniform Partnership Act (UPA) at § 28. Gose, 28 Wash. L.Rev. at 3. Maryland adopted, unrevised, § 28 of the UPA in 1916. Laws of Maryland 1916, ch. 175, § 28. The current statutory provision, which remains unchanged from its original version, is codified at § 9–505 of

---

1. A joint venture and a partnership are indistinguishable for all purposes relevant to the case before us. *See Madison National Bank v. Newrath,* 261 Md. 321, 275 A.2d 495 (1971).

the Corporations and Associations Article (1995 Repl.Vol., 1996 Supp.). It provides as follows:

### § 9–505. Partner's interest subject to charging order

(a) *Authority of court.*—On due application to a competent court of any judgment creditor of a partner, the court which entered the judgment, order or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of the judgment debt with interest thereon; and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts and inquiries which the debtor partner might have made, or which circumstances of the case may require.

(b) *Redemption of interest.*—The interest charged may be redeemed at any time before foreclosure or in case of a sale being directed by the court may be purchased without thereby causing a dissolution:

(1) With separate property, by any one or more of the partners; or

(2) With partnership property, by any one or more of the partners with the consent of all the partners whose interests are not so charged or sold.

(c) *Partner's interest in partnership not deprived by title.*—Nothing in this title shall be held to deprive a partner of his right, if any, under the exemption laws, as regards his interest in the partnership.

By its express terms, § 9–505(a) empowers the trial court to (1) charge the interest of the partner, thereby creating a lien upon the interest; (2) appoint a receiver of any monies due the debtor partner; and (3) "make all other orders, directions, accounts and inquiries which the debtor partner might have made, or which circumstances of the case may require." Also implicit in the statute is that any orders "which circumstances of the case may require" is broad enough to include the power to order a judicial sale of the property subject to the right of redemption prior to foreclosure. *See* § 9–505(b). In the

jurisdictions which have adopted § 28 of the UPA, there is general agreement that the charging order is now the judgment creditor's exclusive method of reaching a partner's interest in a partnership and that the creditor may no longer execute directly on partnership property. *See, e.g., Bohonus v. Amerco,* 124 Ariz. 88, 602 P.2d 469, 470–71 (1979); *Baum v. Baum,* 51 Cal.2d 610, 335 P.2d 481, 483 (1959); *Weisinger v. Rae,* 19 Misc.2d 341, 188 N.Y.S.2d 10, 19 (N.Y.Sup.Ct.1959); *Shirk v. Caterbone,* 201 Pa.Super. 544, 193 A.2d 664, 665 (1963).

While the statute sets forth the general goals and parameters of the charging order remedy, it does not delineate the particular procedures to be utilized in achieving those goals. Section 9–505 does not set forth any procedures to be followed (regarding, for example, any ultimate sale of the partnership interest) once the charging order is in place. Similarly, Rule 2–649 is drafted in very general terms:

**Rule 2–649. CHARGING ORDER**

(a) **Issuance of Order.**—Upon the written request of a judgment creditor of a partner, the court where the judgment was entered or recorded may issue an order charging the partnership interest of the judgment debtor with payment of all amounts due on the judgment. The court may order such other relief as it deems necessary and appropriate, including the appointment of a receiver for the judgment debtor's share of the partnership profits and any other money that is or becomes due to the judgment debtor by reason of the partnership interest.

\* \* \* \* \* \*

Further, case law regarding the charging order does not shed any light on the appropriate procedures for effecting a transfer of a debtor partner's interest under a charging order. Indeed, despite its lengthy existence in Maryland law, we have been able to uncover only six published opinions that even mention the charging order. In *Hatzinicolas v. Protopapas,* 314 Md. 340, 347 n. 5, 550 A.2d 947 (1988), the Court of Appeals mentioned the charging order in a footnote and only

to remark that the case before it did not concern a charging order. In *M. Lit, Inc. v. Berger,* 225 Md. 241, 170 A.2d 303 (1961), the Court of Appeals similarly mentioned the charging order only in passing because the judgment creditor had failed to establish the existence of a partnership. *O.C. Partnership v. Owrutsky,* 88 Md.App. 507, 596 A.2d 76 (1991), while involving the issue of the legal effect of a charging order against a debtor partner's interest, was concerned with the valuation of the partner's interest rather than with the charging order mechanism. In only three cases, *Leventhal v. Five Seasons Partnership,* 84 Md.App. 603, 581 A.2d 449 (1990), *Rector v. Azzato,* 74 Md.App. 684, 539 A.2d 1162 (1988),[2] and *Bank of Bethesda v. Koch,* 44 Md.App. 350, 408 A.2d 767 (1979), have we discussed the nature of the charging order in any detail. None of those cases delineates the scope of the trial court's powers in fashioning relief under the charging order.

Apparently, Maryland is not alone in the paucity of its authority on this subject. *See* § 28, Vol. 6 of the Master Edition of Uniform Laws Annotated, *Business and Nonprofit Organizations and Associations Laws* (West 1995). In 1953, Professor J. Gordon Gose, in his very insightful and lucid discussion of the charging order, stated that one explanation for the dearth of case law on the subject could be that the

---

2. We note that although we applied § 9–505 in *Rector,* that case involved a limited partnership and was governed by § 10–705 of the Corporations and Associations article. Unlike the UPA and the corresponding section of the Uniform Limited Partnership Act (ULPA), § 10–705 provides the judgment creditor with a somewhat more limited remedy than that provided for in the UPA and ULPA. More specifically, § 10–705 provides that,

> [o]n application to a court of competent jurisdiction by any judgment creditor of a partner, the court may charge the partnership interest of the partner with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the partnership interest. This title does not deprive any partner of the benefit of any exemption laws applicable to his partnership interest.

We note the foregoing for purposes of accuracy only. We view the discussion in *Rector* regarding charging orders generally to be both relevant and correct.

statute works so well it presents no problems for those implementing it. 28 Wash. L.Rev., *supra*, at 5. He goes on to state that

> [o]ther evidence, however, suggests that the paucity and serenity of the decisions conceal a number of deficiencies in the statute, particularly in the United States. Casual conversations with American judges and lawyers reveal not only a general unfamiliarity with the statute but also a lack of familiarity with its theory and meaning on the part of those who try to apply it. Such confusion is wholly understandable. Although the statute, when read generally with some understanding of its background, may appear to be satisfactory, it fairly bristles with unanswered questions when it is closely scrutinized. In contrast to statutes pertaining to more conventional enforcement proceedings such as executions, attachments and garnishments, the charging order statute is couched in the most general terms. Neither Section 28 of the Uniform Act nor its English counterpart contains a detailed statement of the procedure for obtaining or the consequences which result from a charging order. The English have something of an advantage in that a "charging order" procedure is prescribed in the Judgment Acts of 1838.... In the United States, however, the "charging order" procedure was a complete innovation and none of the procedural doubts has been squarely resolved by statute or court rule so far as the author has been able to ascertain.

*Id.* at 5–6. Since the publication of that 1953 article, the case law on the subject remains relatively undeveloped. The general understanding and implementation of the charging order, however, seems to be consistent with the view expressed by Professor Gose in 1953:

> [T]he [charging order] statute apparently contemplates a highly flexible and elastic procedure under which the court may employ a charging order, a receivership of the debtor partner's interest, a sale of that interest, and a wide range of orders for accounting or for other purposes "which the circumstances of the case may require." Fundamentally,

the act seems to proceed on the theory that the primary method for satisfying the creditor's judgment shall be by means of an order diverting the debtor partner's share of the profits to his creditor in a manner somewhat like that used in garnishment proceedings. If this method is ineffectual there is another more drastic course of action mentioned—a sale of the debtor's interest in the partnership. The other things provided for—appointment of a receiver and the taking of accounts and the making of such orders as the "circumstances of the case may require"—appear to be designed simply as aids to these two basic methods of collecting. The use of these subsidiary aids to the collecting process certainly should be regarded as permissive rather than compulsory. There is no apparent necessity for the appointment of a receiver, if effective collection would result from the mere issuance of an order requiring the partners to pay directly to the creditor the amounts which otherwise would go to the debtor partner. The receiver in such a case would serve no useful function but would merely add to the expense and complexity of the proceeding.

*Id.* at 10.

Among the cases we have found that discuss the charging order procedure in any detail, there seems to be at least implicit agreement with Professor Gose's observation that the charging order statute provides two basic collection methods: (1) the diversion of the debtor partner's profits to the judgment creditor; and (2) the ultimate transfer of the debtor partner's interest should the first collection method prove unsatisfactory. *See Bohonus,* 602 P.2d at 470; *Hellman v. Anderson,* 233 Cal.App.3d 840, 846–47, 284 Cal.Rptr. 830 (3rd Dist.1991); *Madison Hills Ltd. v. Madison Hills, Inc.,* 35 Conn.App. 81, 644 A.2d 363, 367–69, *appeal denied,* 231 Conn. 913, 648 A.2d 153 (1994); *Nigri v. Lotz,* 216 Ga.App. 204, 453 S.E.2d 780, 782–83 (1995); *Wills v. Wills,* 750 S.W.2d 567, 574 (Mo.App.1988); *Myrick v. Second National Bank of Clearwater,* 335 So.2d 343, 345 (Fla.App.2d Dist.1976); *Tupper v. Kroc,* 88 Nev. 146, 494 P.2d 1275, 1278, *appeal denied,* 88 Nev. 483, 500 P.2d 571 (1972); *FDIC v. Birchwood Builders,* 240

N.J.Super. 260, 573 A.2d 182, 185, *cert. denied*, 122 N.J. 317, 585 A.2d 337 (1990); *Major Real Est. & Inv. v. Republic Financial*, 695 P.2d 893, 894 (Okl.App.1985).

Appellants argue that the trial court had entered a valid charging order pursuant to § 9–505 and Rule 2–649. They argue that the charging order empowered the receiver to effect an assignment of appellee's interest in the partnership without further order of court and that the receiver did effect the assignment as reflected in his report on February 23, 1996. Appellants argue that appellee was estopped to challenge the entry of the charging order because appellee did not pursue his earlier appeal to this Court, failed to redeem his partnership interest pursuant to § 9–505, and failed to challenge the charging order until long after it had been entered and after the assignment by the receiver. More specifically, appellants argue that appellee had thirty days from the entry of the charging order within which to appeal from it and could not challenge it after the mandate had issued from this Court dismissing the appeal. Consequently, appellants argue, the charging order became the law of the case and binding on the trial court. Finally, appellants argue that there is no obligation under the law for a judgment creditor to proceed first against a cash bond.

Appellee distinguishes a judgment from supplementary proceedings to enforce the judgment. He states that the latter is not subject to the finality and law of the case rules. Additionally, appellee states that he had no reason to challenge the charging order until the stay was lifted on February 1, 1996. Appellee asserts that the assignment by the receiver actually was a judicial sale subject to the procedures set forth in the BR rules.[3] Consequently, the assignment was subject to ratification by a court pursuant to former Rule BR3 (now Rule 14–303). Additionally, the charging order was issued without a hearing and without requiring a bond to be posted by the receiver, and the terms of the order usurp the receiver's

---

**3.** As of January 1, 1997, the former BR rules were renumbered and recodified with revisions at Rule 14–301, *et seq.*

discretion in violation of the law. Finally, appellee asserts that the creation of the receivership and review of the receiver's actions are matters of judicial discretion and, additionally, that permitting satisfaction of a judgment from cash is within the appropriate scope of judicial discretion.

■ Preliminarily, we note there is no question but that the underlying judgment which appellants were attempting to collect became enrolled thirty days after it was docketed in 1994. It was not subject to general revisory power and control at the time the court vacated the charging order. *See* Rule 2–535(a). It does not follow, however, that the charging order was enrolled as well. The charging order was a proceeding, supplemental to the underlying judgment, taken for the purpose of enforcing the underlying judgment. If, in fact, enforcement proceedings were considered to be inseparable from, rather than collateral to, the underlying judgment, a judgment in favor of a plaintiff could never be considered final for purpose of appeal before execution proceedings had concluded. *See* Rule 2–602; Md.Code Ann., Cts. & Jud. Proc. Art., § 12–301. In any event, we understand appellants to argue that the charging order itself was a final judgment which triggered the thirty day limit on the trial court's revisory powers. *See* Rule 2–535.

A review of the express terms of the charging order tends to support appellants' argument. The order provides in pertinent part as follows:

ORDERED, that William A. Hahn, Jr. be and he is hereby appointed as a Receiver for the limited purpose of effectuating a transfer, assignment and/or conveyance to the Joint Venture of Edward S. Goldstein's 0.2022 percent interest in the Joint Venture, provided that the judgment amount remains unsatisfied after the expiration of fifteen (15) calendar days after service of this Order is made upon Edward S. Goldstein; and it is further

ORDERED, that the Receiver may effectuate said transfer, assignment and/or conveyance to the Joint Venture upon receipt of written notice from the Judgment Creditor's

counsel that the judgment amount remains unsatisfied after the expiration of the fifteen (15) calendar day period as aforementioned; and it is further

ORDERED, that the Receiver shall be provided with such other power and authority as may be necessary to effectuate the complete assignment, transfer and/or conveyance of Edward S. Goldstein's 0.2022 percent interest without further order of this Court. . . .

A literal reading of the charging order suggests that the order conclusively determined the rights of the parties in that it directed the receiver to assign or transfer appellee's interest in the joint venture, subject only to the condition precedent of a fifteen day default, and without further order of the trial court. By its terms, the order left nothing more for the trial court to do. Without considering more, the charging order would seem to have put appellee out of court, and consequently, to have constituted a final judgment within the meaning of § 12–301 of the Courts & Judicial Proceedings Article. *See, e.g., Montgomery County v. Revere Nat'l Corp.,* 341 Md. 366, 377–78, 671 A.2d 1 (1996) (where order has effect of "putting the parties out of court," concluding the matter between the parties, or denying party the means of further prosecuting case at trial level, order constitutes a final judgment) (quoting *Horsey v. Horsey,* 329 Md. 392, 401–02, 620 A.2d 305 (1993) and cases cited therein); *Popham v. State Farm Mut. Ins. Co.,* 333 Md. 136, 142, 634 A.2d 28 (1993) (judgment must settle rights of parties thereby concluding the cause of action) (quoting *Estep v. Georgetown Leather Design,* 320 Md. 277, 282, 577 A.2d 78 (1990)). Under this view of the charging order, it was a final judgment entered on the docket on August 8, 1994, and enrolled as of September 7, 1994, and could be disturbed only for fraud, mistake or irregularity after that date.

For reasons set forth below, we hold that appellee's interest that was the subject of the charging order was subject to redemption by appellee and the assignment was subject to ratification by the trial court. Further, it could be challenged

by appellee through the filing of exceptions. Accordingly, the charging order was not a final order which concluded the matter between the parties at the time it was issued by the court, and it was subject to revision at any time prior to the entry of a final judgment. Rule 2–602(a)(3); *Revere*, 341 Md. at 376–77, 671 A.2d 1.

As we stated earlier, § 28 of the UPA is drafted in the most general terms and provides courts with very little guidance regarding particular procedures that should be used to further the goals of the charging order. The generality of its terms could be read to sanction the fashioning of charging order procedures on a case-by case basis and without regard to collection procedures already in place with respect to judgment debtors generally. A better explanation for the generality is the fact that § 28 was drafted to fit the differing procedures of all jurisdictions within the United States. We view this latter explanation as the more likely one. Further, we view it as just an unfortunate circumstance that § 28 was adopted in Maryland and most other jurisdictions without any additional elaboration of procedure.

In every published opinion we have been able to uncover that implicitly or explicitly has approved the transfer of the debtor partner's interest, the transfer has taken place according to established procedures for a judicial sale, or in one instance, for strict foreclosure.[4] *See Hellman*, 233 Cal.

---

4. Prior to the enactment of statutes authorizing foreclosure sales, the equitable remedy of "strict foreclosure" was the method by which a mortgagee extinguished the mortgagor's right of redemption in the mortgaged property. *In the Matter of Aurora Fed. Sav. & Loan Assoc.*, 223 Md. 135, 136–37, 162 A.2d 739 (1960); *Saunders v. Stradley*, 25 Md.App. 85, 92, 333 A.2d 604 (1975). In such a proceeding, no sale of the mortgaged property took place, but instead, the equity court determined the amount due the mortgagee and passed a decree naming a date for the sum named in the decree to be paid, or the mortgagor's right to redeem would forever be taken away. *Aurora Fed.*, 223 Md. at 136, 162 A.2d 739. While strict foreclosure remains a viable, if little used, procedure for foreclosing mortgages, *Fairfax Sav., F.S.B. v. Kris Jen Ltd. Partnership*, 338 Md. 1, 21, 655 A.2d 1265 (1995), it does not apply to the enforcement of judgment liens. Strict foreclosure is premised on the fact that legal title to the property already rests in the

App.3d at 848–49, 284 Cal.Rptr. 830 (foreclosure sale as distinguished from execution sale); *Madison Hills Ltd.*, 644 A.2d at 368–70 (strict foreclosure); *Nigri v. Lotz*, 453 S.E.2d at 783 (judicial sale); *Tupper*, 494 P.2d at 1278 (judicial sale); *Birchwood Builders*, 573 A.2d at 185–86 (judicial sale). Indeed, all of the foregoing cases presume without deciding that the ordering of a sale is something that the trial court may do as a supplement to charging the interest of the partnership and appointing a receiver for profits. We concur but hold that any transfer of the debtor partner's interest is to take place pursuant to the rules governing judicial sales.

■■■ Forced sales prescribed by the Maryland Rules fall into three general categories: (1) execution or sheriff's sales, (2) judicial sales, or (3) sales pursuant to foreclosure of mortgages or other security devices or liens created by statute providing for foreclosure in the manner specified for foreclosure of mortgages. This third category includes mortgages that contain a power of sale, a consent to decree, both, or neither. The Maryland Rules prescribe pre-sale and post-sale procedures for all such forced sales. More specifically, all such forced sales are subject to challenge by the filing of exceptions and are required to be ratified by the trial court. *See* Rule 2–644(d) (applying report and ratification procedures to sheriff's sales); former Rule W74(e) (currently Rule 14–207(d)) (applying report, ratification, and mandatory audit procedures to sales of property for foreclosures of mortgages or of liens created by lien instruments or statute); former Rules BR1 and BR2(a) (currently Rules 14–301 to 14–302) (applying post-sale procedures of former BR rules and, currently, Title 14, Chapter 300, to all court-ordered sales). *See also* Rule 13–103(c) (applying report and ratification procedures to all sales in cases when receiver or assignee has been appointed to administer debtor property for benefit of credi-

---

mortgagee and, by extinguishing the mortgagor's right of redemption, the mortgagee merely is clearing its title to the property. Osborne, *Mortgages*, Ch. 13, § 312, at 653 (2d Ed.1970).

tors).[5] No such sales are final until ratified. *Fowler v. Fitzgerald,* 82 Md.App. 166, 175–76, 570 A.2d 866 (1990).

■ Although Rule 2–649(a) gives the court broad discretion to "order such other relief as it deems necessary and appropriate," we do not read it to give the court the authority to fashion procedures for the transfer of the debtor partner's interest without regard to those procedures set forth in the Maryland Rules. A better reading of Rule 2–649 is that it provides the court with the authority to utilize any of the procedures available under Maryland law. The one procedure currently available for the transfer of the debtor partner's interest is the judicial sale. Any other reading of Rule 2–649 would lead us to conclude that the Court of Appeals did not intend to protect the partnership interest with the same types of procedural safeguards it provides for other types of property. We can ascertain no rationale for such unfavorable treatment, and, indeed, such a reading would be at odds with the right of redemption provided in § 9–505(b). Further, our holding is consistent with the view expressed by other courts, which is that any transfer of the debtor partner's interest should occur under judicial supervision. *Hellman,* 233 Cal. App.3d at 849, 284 Cal.Rptr. 830 (stating that, in contrast to an execution sale, wherein the court clerk acts in merely a ministerial capacity, a court-ordered sale to foreclose the lien created by a charging order on a partnership interest involves judicial supervision); *First Nat. Bank of Denver v. District Court,* 652 P.2d 613, 617 (Colo.1982) (holding that court should have conducted a hearing with proper notice to affected parties to determine the propriety of allowing an execution

---

5. In such cases, a sale would be court-ordered and subject to the judicial sale rules of Title 14, Chapter 300 in any event. We read Rule 13–103(c) merely to clarify that a separate category is not created solely by virtue of the fact that a receiver has been appointed. Rule 13–103(c) does not directly apply to the instant case for at least two reasons. First, it is a new rule that was not in effect at the time the trial court vacated the charging order. Further, neither the former BP Rules nor the current Title 13 Rules apply to this case in the absence of a court order that they apply. *See* former Rules BP1.b.2.(a)(7) and BP1.b.2.(b) and current Rule 13–102 (setting forth the scope of Title 13).

sale of partnership interest in lieu of payments to the judgment creditor of the debtor partners' share of partnership profits).[6]

Relying on *Leventhal,* 84 Md.App. at 606, 581 A.2d 449, appellants argue that § 9–505 gives the receiver the power to do whatever appellee could have done, including assign appellee's interest. That interpretation of § 9–505 arguably removes the charging order remedy from the confines of the post-sale procedures of Title 14, Chapter 300. *Leventhal,* however, is not on point, but instead, involved the general question of the powers of a receiver to protect the value of the partnership interest and, specifically, the issue of a receiver's standing to petition the trial court for dissolution of a partnership. The holding in *Leventhal* is consistent with our reading of § 9–505.

Section 9–505 empowers the *trial court* to "make all other orders, directions, accounts and inquiries which the debtor partner might have made, or which the circumstances of the case may require." *See also* Rule 2–649 (providing that *"[t]he court may order such other relief as it deems necessary and appropriate,* including the appointment of a receiver for the judgment debtor's share of the partnership profits and any other money that is or becomes due to the judgment debtor by reason of the partnership interest") (emphasis added). Indeed, the phrasing of § 9–505(a) and of Rule 2–649 suggests that the role contemplated for a receiver appointed pursuant to a charging order is a very limited role, *i.e.,* confined to the receipt of moneys due the debtor partner as a result of his partnership interest. *See also* Meeting Minutes of the Court of Appeals Standing Committee on Practice and Procedure,

**6.** Although we acknowledge that the *First Nat. Bank of Denver* court was concerned with protecting the interests of the nondebtor partners, interests which obviously are not furthered by judicial supervision in the instant case, we also are cognizant of the fact that § 28 of the UPA, unlike its English counterpart, provides the *debtor* partner with the right of redemption and gives the debtor partner, and not just the nondebtor partners, the right to purchase the interest at a court-ordered sale. *See* Gose, *supra,* 28 Wash. L.Rev. at 3–4.

dated April 15, 1983 (noting that "Judge McAuliffe pointed out that [the charging order] receivership is very limited in nature as the receiver is appointed for the sole purpose of receiving money"); Hanks, Maryland Corporation Law, § 11.10 at 365–66 (1996–2 Supp.) (noting that § 3–418(a) of the Corporations and Associations Article, which vests in receiver appointed for dissolution of a Maryland corporation full title to corporate assets, is a departure from case law which established that the receiver has no beneficial title or interest in the property but only the right of possession of the corporation's assets; there is no corollary to § 3–418(a) in the Maryland Partnership Act). While § 9–505 does give the trial court the authority to vest the receiver with additional powers, it does not give the court the authority to exempt a transfer of the debtor partner's interest from the procedures set forth in the Maryland Rules.

■ Given that the transfer was subject to challenge and review and was not final until ratified by the trial court, the charging order authorizing the transfer was not a final order, and was subject to revision at any time prior to the entry of a final judgment. Moreover, the trial court could not have ratified the transfer unless the court was satisfied that the sale was fairly and properly made. See former Rule BR6.b.4, currently Rule 14–305(e). At the March 27, 1996 hearing on appellee's exceptions to the receiver's report and on the parties' various outstanding motions, the trial court noted that substantially all of the judgment was secured by a cash bond that had been posted by appellee in order to stay execution of the judgment during the pendency of the initial appeal. At the time the cash was deposited into the Clerk's registry, it was enough to cover the judgment plus a year's worth of interest. Although our mandate in the first appeal had issued on July 5, 1995, appellants did not seek to dissolve the stay and execute on their judgment until February of 1996. In the interim, enough interest on the judgment had accrued so that there was a deficiency of a little over twelve hundred dollars between the judgment and the cash bond. Appellants' counsel admitted that appellants' primary objective in seeking to execute on the charging order was to obtain a "business

divorce." Indeed, appellants' counsel argued that the trial court should assist appellants in this endeavor. Rather than permit the charging order to be used for this purpose, the trial court gave appellee an additional twelve days within which to deposit the deficiency into the Clerk's registry and thereby redeem his interest. The trial court's actions in this regard did not constitute an abuse of discretion, given the particular circumstances of this case. We agree with Professor Gose that the primary means of satisfying a judgment from a partnership interest should be the receipt and distribution of any income or profits due the debtor partner, and that, ordinarily, sale of the interest should not be resorted to unless the judgment could not be satisfied in that manner within a reasonable period of time. Gose, *supra*, 28 Wash. L.Rev. at 16.[7]

Given our interpretation of the charging order, we disagree with appellants that appellee was estopped from challenging the charging order. Although an order appointing a receiver is one of the limited types of interlocutory orders from which a party may take an immediate appeal, *see* Md. Code Ann., Cts. & Jud. Proc. Art., § 12–303, appellee was free to challenge the assignment by filing exceptions under Rule 14–305(d). To be sure, appellee did not challenge the charging order as expeditiously as he might have, but instead, waited until the last possible moment to challenge it. Accordingly, the equities are not overwhelmingly in his favor. That fact notwithstanding, the trial court did not abuse its discretion in considering the challenge when it did.

Appellants cite to *Frey v. McGaw,* 127 Md. 23, 27, 95 A. 960 (1915), and *Goldenberg v. Title Guarantee Company,* 212 Md. 448, 452, 129 A.2d 684 (1957), for the proposition that the judgment creditor has the choice of selecting that piece of

---

7. Indeed, although not well-developed on the record, there was a reference below to the fact that the debtor partner was owed a 1.1 million dollar developer's fee under the joint venture agreement. If that fee was due to be paid in a timely fashion, the judgment should have been satisfied out of the fee.

the debtor's property against which it will satisfy its judgment. Although appellants do not expressly argue the point, a logical extension of that proposition is that the trial court's selection of the means of satisfaction constitutes an abuse of discretion. *Frey* and *Goldenberg*, however, involved standard execution procedures rather than the peculiar mechanism of the charging order which is subject both to the broad discretion of the trial court and to redemption by the debtor. Ordinarily, the trial court should consider whether the judgment can be satisfied out of the debtor partner's profits prior to resort to the more drastic method of sale of the debtor partner's interest.

Finally, appellants argue that the court erred in vacating the charging order *nunc pro tunc* because that phrase is properly used only to correct clerical errors and not to correct judicial error. We agree. As we stated in *Prince George's Co. v. Commonwealth Land Title,* 47 Md.App. 380, 386, 423 A.2d 270 (1980), the phrase *nunc pro tunc* signifies a thing that is done now which has the same legal force and effect as if done at the time it ought to have been done. As we further stated in that case, it is properly used only to correct clerical errors. In this case, the entry of the charging order was not merely a clerical error and could not be vacated *nunc pro tunc*. Accordingly, we will modify the judgment to strike the phrase *nunc pro tunc*.[8] *See* Rule 8–604(a)(4).

---

**8.** Appellee had argued below for the inclusion of the phrase *nunc pro tunc* because he was concerned that appellants would use the existence of the charging order to deny appellee a 1.1 million dollar developer's fee that he was owed pursuant to the terms of the joint venture agreement. As a preliminary matter, the joint venture agreement, which was included in its entirety in the record, indicates that the developer's fee is for services rendered and does not seem to be conditioned upon appellee's continued status as a partner. In any event, the charging order did not interrupt appellee's status as partner, but instead, merely constituted a lien upon his interest. *See Rector,* 74 Md.App. at 690–92, 539 A.2d 1162; *Koch,* 44 Md.App. at 353–56, 408 A.2d 767. Appellee never ceased to be a partner by virtue of the charging order.

JUDGMENT AFFIRMED IN PART AND MODIFIED IN PART IN ACCORDANCE WITH THE OPINION OF THE COURT; APPELLANTS TO PAY THE COSTS.