943 A.2d 630

Robert H. KEELER

v.

ACADEMY OF AMERICAN FRANCISCAN HISTORY, INC.

No. 2433, Sept. Term, 2006.

Court of Special Appeals of Maryland.

March 4, 2008.

James A. Vidmar, Jr. (Jennifer D. Larkin, Linowes and Blocher, LLP, on brief), Bethesda, for appellant.

Patrick C. McKeever (Maury S. Epner, Miller, Miller & Canby, on brief), Rockville, for appellee.

Panel KRAUSER, C.J., ADKINS, WOODWARD, JJ.

KRAUSER, C.J.

Cross motions for summary judgment filed in the Circuit Court for Montgomery County presented the question whether the charging order of appellee Academy of American

Franciscan History, Inc. ("AAFH") against appellant Robert H. Keeler's interest in the Gaither Road Partnership ("GRP") remained enforceable even though the underlying money judgment had expired under Maryland Rule 2–625. The circuit court held that it did and granted summary judgment in favor of AAFH. We affirm.

## Background

In 1989, Saratoga Development Corporation ("Saratoga") purchased 14 acres of residential real estate in Montgomery County, Maryland from AAFH for approximately $7.75 million. Saratoga paid $3.75 million in cash and executed, along with its President, appellant Robert H. Keeler, a confessed judgment note in the amount of $4 million. When Saratoga and Keeler failed to pay the interest due on the note, AAFH filed a complaint to confess judgment and assent to entry of judgment against both in the Circuit Court for Montgomery County.

On October 17, 1989, the circuit court entered a money judgment against Saratoga and Keeler and in favor of the AAFH in the amount of $4 million plus attorneys' fees,[1] interest, and costs. A month later, on December 20, 1989, an order enforcing the money judgment was obtained by AAFH charging Keeler's partnership interest in GRP. The charging order stated in pertinent part:

> ORDERED, that the Gaither Road Partnership shall sequester and pay over to the Judgment Creditor all distributions of any kind whatsoever otherwise payable to the Judgment Debtor, Robert H. Keeler, and to account for said payments to this Court and to the Judgment Creditor, until such time as the judgment entered against the Judgment Debtor has been paid in full and satisfied. . . .

A decade later, on December 20, 1999, Keeler filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for

---

1. The award of attorneys' fees was later vacated by agreement of the parties.

the District of Maryland. On May 11, 2000, the bankruptcy court issued a discharge order. That order barred "the commencement or continuation of [ ] action[s] to recover or collect the debt [owed AAFH] as a personal liability of [Keeler] and void[ed] any judgment to the extent that the judgment [wa]s a determination of personal liability of [Keeler]." *Keeler v. Acad. of Am. Franciscan History, Inc.*, 257 B.R. 442, 445 (Bkrtcy.D.Md.2001). The bankruptcy court entered a final decree on July 20, 2000, and the case was administratively closed.

On August 17, 2000, Keeler filed a motion to re-open the bankruptcy case to determine whether a violation of the discharge order had occurred when AAFH attempted to collect income from Keeler's interest in GRP. Keeler also filed a "Motion for Declaratory Relief and Summary Judgment" asserting, among other things, that the charging order that had been entered by the circuit court against his interest in GRP and in favor of AAFH had been terminated by the bankruptcy court's order of discharge. After re-opening the bankruptcy case, the bankruptcy court held that "although any action to collect upon the lien was stayed during the bankruptcy case, the lien itself 'rode through' the bankruptcy case and remain[ed] viable upon property captured before the case commenced." *Keeler v. Acad. of Am. Franciscan History, Inc.*, 257 B.R. 442, 448 (Bkrtcy.D.Md.2001). Consequently, the rights of AAFH remained unaffected after the bankruptcy case, including the right to collect income due Keeler from his interest in GRP. *See id.* The decision of the bankruptcy court was affirmed by the United States District Court for the District of Maryland. *See In re Keeler*, 273 B.R. 416, 422 (D.Md.2002).

Six years later, on September 29, 2006, Keeler filed a declaratory judgment action against AAFH and GRP in the Circuit Court for Montgomery County, claiming that AAFH's charging order was extinguished when AAFH failed to renew its judgment pursuant to Maryland Rule 2–625 ("Rule 2–625"), and thus that GRP was no longer required to pay money to AAFH. The complaint precipitated cross-motions for summary

judgment. On November 30, 2006, the circuit court denied Keeler's summary judgment motion but granted AAFH's motion, ruling that the charging order "did not expire with the money judgment" and was therefore "still in place." This appeal followed.

## Discussion

Keeler contends that the circuit court erred in granting summary judgment in favor of AAFH. He reasons that the money judgment entered against him in 1989 expired twelve years later when AAFH failed to renew it under Rule 2–625 and, consequently, that the charging order enforcing that judgment also lapsed at that time. AAFH contends otherwise. Claiming that the charging order is itself an enforceable judgment that exists independently of the underlying money judgment, AAFH maintains that the charging order survived the expiration of the money judgment.

Because there are no genuine issues of material fact, our review of the decision below is confined to the question of "whether the trial court was legally correct." *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990). We conclude that it was. The charging order against Keeler's partnership interest in GRP constitutes, we hold, a separate final judgment that remains enforceable even after the underlying money judgment expired.

"A judgment generally is considered 'final' if it determines or concludes the rights involved, or denies the appellant the means of further prosecuting his rights and interest in the subject matter of the proceeding." *Seat Pleasant Baptist Church Bd. of Trs. v. Long,* 114 Md.App. 660, 669, 691 A.2d 721 (1997); *see also Smith v. Taylor,* 285 Md. 143, 146–47, 400 A.2d 1130 (1979). In short, "[t]he judgment must settle the rights of the parties, thereby concluding the cause of action." *Estep v. Georgetown Leather Design,* 320 Md. 277, 282, 577 A.2d 78 (1990).

A "money judgment" is such a judgment. Specifically, it is a "judgment determining that a specified amount of

money is immediately payable to [a] judgment creditor." Maryland Rule 1–202(p). "It does not," however, "include a judgment mandating the payment of money." *Id.* In other words, it is not an "injunctive type of judgment." Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 17 (3d ed.2003). Indeed, "[a]n order directing a party to pay is not a money judgment precisely because it is injunctive in character." *Id.*

But, unlike other judgments, a money judgment is subject to Rule 2–625. That rule states that "[a] money judgment expires 12 years from the date of entry or most recent renewal." To avoid that outcome, however, the rule further provides that "[a]t any time before expiration of the judgment, the judgment holder may file a notice of renewal and the clerk shall enter the judgment renewed." Rule 2–625.

■ On the other hand, a charging order is not a money judgment but "the statutory means by which a judgment creditor may reach the partnership interest of a judgment debtor." *91st Street Joint Venture v. Goldstein,* 114 Md.App. 561, 567, 691 A.2d 272 (1997) (citing *Bank of Bethesda v. Koch,* 44 Md.App. 350, 354, 408 A.2d 767 (1979)). The purpose of the charging order is "to protect the partnership business and prevent the disruption that would result if creditors of a partner executed directly on partnership assets." [2] *Lauer Constr., Inc. v. Schrift,* 123 Md.App. 112, 115, 716 A.2d 1096 (1998). *See also Bank of Bethesda,* 44 Md.App. at 354, 408

---

**2.** Prior to [the] availability [of charging orders], the courts would resort to common law procedures for collection that were ill-suited for reaching partnership interests. Typically, despite the fact that individual partners do not have title in partnership property, partnership property would be seized under writs of execution; the debtor partner's interest in the partnership would be sold, often to the judgment creditor, subject to the payment of partnership debts and prior claims of the partnership against the debtor partner; and the sale of the debtor partner's interest would result in compulsory dissolution and winding up of the partnership. As noted by at least one jurist, "a more clumsy method of proceeding could hardly have grown up."

*91st Street Joint Venture,* 114 Md.App. at 567, 691 A.2d 272 (citations omitted).

A.2d 767 ("[A charging order] serves only the precise purpose statutorily indicated, *i.e.*, to 'charge' an interest with a debt.").

The scope and operation of a charging order is defined by Title 9A of the Corporations and Associations Article. "On application by a judgment creditor of a partner or of a partner's transferee, a court having jurisdiction may charge the transferable interest of the judgment debtor to satisfy the judgment." § 9A–504(a). "A charging order," therefore, "constitutes a lien on the judgment debtor's transferable interest in the partnership," § 9A–504(b), and is "the exclusive remedy by which a judgment creditor of a partner or partner's transferee may satisfy a judgment out of the judgment debtor's transferable interest in the partnership." § 9A–504(e). The "transferable interest of a partner in [a] partnership is the partner's share of the profits and losses of the partnership and the partner's right to receive distributions." § 9A–502.

■ Although not a money judgment, a charging order may constitute a final judgment where the elements of finality are met. *See 91st Street Joint Venture v. Goldstein,* 114 Md.App. 561, 691 A.2d 272 (1997). In *91st Street Joint Venture,* we considered whether the charging order at issue was enforceable as a final judgment. There, the charging order appointed a receiver for the purpose of effectuating a "transfer, assignment and/or conveyance" of the judgment debtor's interest in a joint venture.[3] 114 Md.App. at 565, 691 A.2d 272. After noting that the transfer in question had to "take place pursuant to the rules governing judicial sales,"[4] *id.* at 577, 691 A.2d 272, we observed that the interest at issue was not only "subject to redemption" by the judgment debtor,[5] but that any

---

**3.** We noted in *91st Street Joint Venture* that "[a] joint venture and a partnership are indistinguishable for all purposes relevant to the case. . . ." 114 Md.App. at 567 n. 1, 691 A.2d 272.

**4.** "The court may order a foreclosure of the interest subject to the charging order at any time. The purchaser at the foreclosure sale has the rights of a transferee." § 9A–504(b).

**5.** "At any time before foreclosure, an interest charged may be redeemed: (1) By the judgment debtor; (2) With property other than

transfer of the interest was "subject to ratification by the trial court," *id.* at 575, 691 A.2d 272, and, furthermore, that the transfer "could [also] be challenged by [the judgment debtor] through the filing of exception s." [6] *Id.* at 575–76, 691 A.2d 272.

Because the transfer in *91st Street Joint Venture* was "subject to challenge and review and was not final until ratified by the trial court," *id.* at 580, 691 A.2d 272, the charging order authorizing the transfer remained, we observed, "subject to revision at any time prior to the entry of a final judgment." *Id.* Consequently, the charging order "was not a final order which concluded the matter between the parties at the time it was issued by the court." *Id.* at 576, 691 A.2d 272 (citing Maryland Rule 2–602(a)(3); *Montgomery County v. Revere Nat'l Corp.*, 341 Md. 366, 377–78, 671 A.2d 1 (1996)). In so ruling, our decision clearly implied the converse, that is, had the charging order settled the rights of the parties at the time it was issued and thereby concluded the matter between the parties, it would have been a final judgment.

▮ And that is precisely what occurred here. The charging order settled the rights of the litigants at the time it was entered and concluded the matter between the parties. Therefore, in accordance with *91st Street Joint Venture*, it was a final judgment.

To be more precise, AAFH's charging order states that GRP "shall sequester and pay over to the Judgment Creditor all distributions of any kind whatsoever otherwise payable to the Judgment Debtor, Robert H. Keeler . . . until such time as the judgment entered against the Judgment Debtor has been paid in full and satisfied. . . ." Unlike the charging order in

---

partnership property, by one or more of the other partners; or (3) With partnership property, by one or more of the other partners with the consent of all of the partners whose interests are not so charged." § 9A–504(c).

**6.** "This title [Title 9A of the Corporations and Associations Article] does not deprive a partner of a right under exemption laws with respect to the partner's interest in the partnership." § 9A–504 (d).

*91st Street Joint Venture,* AAFH's order does not direct the transfer of Keeler's interest in the partnership; it simply requires that any distributions owed Keeler be paid directly to AAFH until the debt is satisfied.. Because there is no interest to be redeemed or transfer to be challenged by exception or to be ratified by the circuit court, the rights of the parties are settled and thus AAFH's order constitutes a final judgment.

Moreover, Keeler's reliance on such extraterritorial cases as *Monroe v. Berger,* 297 B.R. 97, 101–02 (S.D.Ohio 2003), for the contrary proposition is misplaced. In *Monroe,* a charging order against the judgment debtor's interest in a partnership was obtained prior to the judgment debtor's bankruptcy. 297 B.R. at 98–99. While "determined to be valueless in [the] bankruptcy," the interest later increased in value and the holders of the charging order took steps to collect the balance of the original debt. *Id.* at 99.

Arguing that the charging order existed independently of the underlying judgment, the holders of the order, in fact, cited *Keeler v. Academy of American Franciscan History, Inc.,* 257 B.R. 442 (Bkrtcy.D.Md.2001), for the proposition that "a charging order is a pre-petition lien that passes through bankruptcy unscathed." *Monroe,* 297 B.R. at 101. But the United States District Court for the Southern District of Ohio disagreed with *Keeler,* 257 B.R. 442 (Bkrtcy.D.Md.2001), stating that "it is not established in Ohio statutory or case law that a charging order constitutes a lien or creates a lien." *Monroe,* 297 B.R. at 101. It therefore concluded that "[r]egardless of arguable differences in other jurisdictions, Ohio law simply does not provide that a charging order passes through a bankruptcy unscathed." *Id.* But, in contrast to Ohio law, Maryland law declares that "[a] charging order constitutes a lien on the judgment debtor's transferable interest in the partnership," Corporations and Associations Article § 9A–504(b), and thus we reach a decidedly different result here than the Ohio district court did in *Monroe.*

Finally, Keeler claims that "[a]lthough Maryland appellate courts apparently have not ruled on the issue, substantial and

persuasive authority exists from other jurisdictions holding that a judgment lien is of no further force or effect after the underlying judgment expires." But "[a] judgment lien," it has been observed, "is entirely dependent for its existence on the statutory provision that created it. . . . Accordingly, the terms and legal effect of the statute are controlling with respect to the existence of a judgment lien and with respect to the rights of the judgment creditor under such a lien." 50 C.J.S. Judgments § 551 (1997). While Keeler cites numerous cases in support of his contention that a judgment lien is of no further force or effect after the underlying judgment expires, none are persuasive because the liens described in each are controlled by statutes materially different from the statute governing charging orders in Maryland. *See Mousel Law Firm v. Townhouse, Inc.*, 259 Neb. 113, 116–17, 608 N.W.2d 571 (2000) (addressing the question of whether an expired judgment and its associated judicial lien on a homestead could be revived pursuant to Nebraska Revised Statutes § 25–1515); *Bulmash v. Davis*, 24 Cal.3d 691, 696, 157 Cal.Rptr. 66, 597 P.2d 469 (1979) (examining the status of a lien whose underlying judgment was vacated pursuant to California Code of Civil Procedure § 674); *Rosenzweig v. Ferguson*, 348 Mo. 1144, 1148, 158 S.W.2d 124 (1941) (addressing the question of whether mechanics' liens were superior to appellants' deed of trust); *Nutt v. Cuming*, 155 N.Y. 309, 49 N.E. 880, 880 (1898) (holding that judgments over 10 years old cease to be liens upon real estate under New York law, and consequently are not payable from the surplus of a foreclosure sale); *Bagley v. Ward*, 37 Cal. 121, 131 (1869) (discussing the relationship between an attachment lien, whose purpose is to secure payment *prior to* the determination of liability, and the underlying judgment, under California law).

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**